Thomas H. Bienert, Jr., CA State Bar No. 135311
Whitney Z. Bernstein, CA State Bar No. 304917
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701
Email: tbienert@bmkattorneys.com
wbernstein@bmkattorneys.com
*Attorneys for James Larkin*

Gary S. Lincenberg, State Bar No. 123058
Ariel A. Neuman, State Bar No. 241594
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
Email: glincenberg@birdmarella.com
aneuman@birdmarella.com
*Counsel for John Brunst*

Additional counsel listed on next page



FILED

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In the Matter of the Seizure of:** <br><br> Up To And Including $10,000 in Bank Funds Held in JP Morgan Chase Account #XXXXX9285; Up To and Including $100,000 in Bank Funds Held in JP Morgan Chase Account #XXXXX4381; Up To and Including $250,000 in Bank Funds Held in JP Morgan Chase Account #XXXXX9698; and Up To And Including $100,000 in Bank Funds Held in JP Morgan Chase Account #XXXXX5397. | Case No. 18-MJ-02875 <br><br> Simultaneously Filed In: <br> 18-MJ-02872; 18-MJ-02873; 18-MJ-02874; <br> 18-MJ-02876; 18-MJ-02878; 18-MJ-02880; <br> and 18-MJ-02883 <br><br> **RESPONSE TO GOVERNMENT'S *EX PARTE* APPLICATION TO SET BRIEFING SCHEDULE** |

James C. Grant (Wash. Bar No. 14358; admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Ave, Suite 2200
Seattle, Washington 98101
Telephone: (206) 757-8096
Facsimile: (206) 757-7096
Email: jimgrant@dwt.com
*Counsel for Michael Lacey and James Larkin*

Paul J. Cambria, Jr., State Bar No. 177957
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite #120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
Email: pcambria@lglaw.com
*Counsel for Defendant Michael Lacey*

Michael L. Piccarreta (AZ Bar No. 003962; admitted *pro hac vice*)
PICCARRETA DAVIS KEENAN FIDEL PC
2 E Congress St., Suite 1000
Tucson, Arizona 85701
Telephone: (520) 622-6900
Facsimile: (520) 622-0521
Email: mlp@pd-law.com
        jkeenan@pd-law.com
*Counsel for Andrew Padilla*

Steve Weiss (AZ Bar No. 002261; admitted *pro hac vice*)
KARP & WEISS PC
3060 N Swan Rd.
Tucson, Arizona 85712
Telephone: (520) 325-4200
Facsimile: (520) 325-4224
Email: sweiss@karpweiss.com
*Counsel for Joye Vaught*

Bruce Feder (AZ Bar No. 004832; admitted *pro hac vice*)
FEDER LAW OFFICE, P.A.
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
Email: bf@federlawpa.com
*Counsel for Defendant Scott Spear*

Anne M. Chapman, CA State Bar 203865
MITCHELL STEIN CAREY CHAPMAN PC
One Renaissance Square
2 North Central Avenue, Suite 1450
Phoenix, Arizona 85004
Telephone: (602) 388-1232
Facsimile: (602) 358-0291
Email: anne@MSCCLaw.com
*Counsel for certain former Backpage.com employees*

## I. INTRODUCTION

In the December 12, 2018 hearing on Movants' Motion challenging the government's seizure warrants for attorney retainer funds, the Court asked the government to provide supplemental briefing, explaining (1) its claim of mootness, and (2) its conduct in threatening to execute seizure warrants even when Movants had sought stays of the warrants. The Court ordered the government to provide this supplemental briefing by December 17, and allowed Movants until December 21 to respond.

Thereafter, counsel for the government contacted Movant's counsel to suggest a stipulation to address the Court's concerns and move forward with briefing on First Amendment issues. The government conceded that it would waive its mootness arguments. The government offered to allow all counsel to access and use retainer funds for representation through November 30, 2018, including that the government would remit funds it had previously seized and held. Movants responded that, while this did not properly restore the status quo, it might represent a workable compromise, so long as it was understood that Movants would not waive any arguments about the propriety of the government's actions. The government agreed to this, and the parties worked out other issues. However, when Movants suggested that counsel be permitted to access and use retainer funds through January 31, 2019, given the proposed extended briefing schedule, the government reneged on its offers.

The government has now filed an *ex parte* application for a briefing schedule "on the limited issue of whether the seizure warrants required any standard other than probable cause before they could be issued." *Ex Parte* Application to Set Briefing Schedule, at 4 ("App."). This is a blatantly inaccurate characterization of the First Amendment and Fourth Amendment issues presented by the government's improper seizure warrants and actions. The issue is whether the government may seize proceeds from publishing activities on the premise that the published speech was illegal, without *proving* illegality, as the Supreme Court has long held it is the government's burden to do. The government has offered no opposition to Movants' showings that pretrial

seizure of First Amendment-protected assets, as the government has done here, is unconstitutional. In any event, the government has simply disregarded the Court's December 12, 2018 orders. The government offers no explanation or defense of its actions in demanding that counsel turn over retainer funds "in lieu" of execution of the seizure warrants, even when Movants' counsel sought or obtained stays. The government does not get to choose the issues it would like to address and avoid the rest.

Movants agree the Court should address the restrictions and prohibitions on the government's actions under the First, Fourth, Fifth and Sixth Amendments, *Franks v. Delaware*, 438 U.S. 154 (1978), and on other grounds. But the issue at this juncture is not just about setting a briefing schedule. The issue is what interim relief is appropriate pending the Court's consideration of the constitutional issues. Given that the government has offered no opposition on the merits and has not disputed that Movants are suffering irreparable harm from the actual and "de facto" seizures of retainers, the Court should enter an order restoring the status quo as it stood before the government's actions – requiring return of the seized funds and precluding restrictions on use of the funds pending resolution of the constitutional issues. *Then*, the Court should take up the constitutional issues pursuant to an agreed or set briefing schedule.

## II. BACKGROUND

### A. The Government's Seizure Warrants.

On October 31, 2018, the government filed applications and obtained twelve warrants from this Court to seize funds held in attorney trust accounts for the defense of Movants[1] and related parties subject to criminal charges and claims related to the Backpage.com website, which the government previously seized and shuttered. The government effected these seizures despite having told defendants' counsel six months

---

[1] Movants here are James Larkin, Michael Lacey, John Brunst, Scott Spear, Andrew Padilla, Joye Vaught, Elizabeth McDougall, and five former employees of Backpage.com, LLC. The first six individuals are also named in the indictment pending in the District of Arizona, and are also referred to here as "defendants."

ago that it would not seek to forfeit retainer funds. In the meantime, the government has allowed counsel for Carl Ferrer and Backpage.com – both of which have pleaded guilty and agreed to cooperate – to continue to hold and use retainer funds in criminal and civil cases, including to attack defendants and related parties in those cases.

The seizure warrants for attorney retainers followed on the heels of some two dozen other warrants the government obtained in an effort to seize all assets of the defendants. The government's theory then, and now, is that every dollar of revenue earned by the website in publishing third-party online ads – as well as defendants' assets that have nothing to do with the website – constitute criminal proceeds.

On July 31, 2018, defendants filed a motion to vacate the government's earlier set of seizure warrants as violating the First, Fourth, and Fifth Amendments and because they were premised on a materially false and misleading affidavit from a postal inspector. Rather than address the merits, the government made procedural arguments that issues concerning the warrants should be raised in the District of Arizona. Judge Klausner accepted the government's arguments and issued a stay. Then, after the government obtained the retainer seizure warrants and defendants sought relief in the Arizona federal court, the government insisted that any challenge to the warrants had to be heard in this Court. Judge Logan in the District of Arizona accepted that argument. Throughout this time – now going on five months – the government has never responded on the merits of Movants' constitutional challenges about the warrants and the government's actions.

### B. Motions and Orders to Stay the Government's Retainer Seizure Warrants.

As the Court is aware from the prior briefing, after the government obtained the retainer seizure warrants, it contacted counsel holding the retainers to "offer" them the "option" of turning over funds, rather than risk damaging their banking relationships and freezing their entire IOLTA accounts. When counsel indicated they would seek to stay the seizure warrants to obtain court review, the government responded that it would

proceed to execute its warrants regardless. *See* Emergency Mot. to Stay, No. 2:18-MJ-2880, Ex. C (concerning retainer funds held for representation of Ms. McDougall). In fact, *all* of the Movants sought stays of the government's retainer seizure warrants,[2] yet the government would not stand down to allow judicial review, instead demanding the law firms remit funds by November 13, 2018. As the Court has also seen, even when Movants obtained a stay order minutes after giving bank wire instructions to meet the government's demands, and then recalled the wire in light of the order, the government refused to comply. *See* Dec. 12, 2018 Hearing Trans. at 90:10-91:2.

Through its tactics, the government was able to obtain the bulk of the attorney retainer funds before this Court could hear the issues on December 12, 2018. However, three firms were able to obtain timely stays to continue to hold retainer funds.[3]

### C. The December 12, 2018 Hearing and the Court's Order to the Government for Further Briefing.

At the December 12 hearing, and in pleadings beforehand, the government again said nothing on the merits – its sole response to Movants' challenges was to argue that the motions were moot because the seizure warrants had expired. *See, e.g.*, Gov't Resp., No. 18-MJ-02872 (Dkt. 5). Yet, at the same time, the government indicated it would seek to seize the attorney retainer funds again. Dec. 12 Trans. at 107:4-107:10 (Mr. Kucera: "The government in all likelihood will again seek to seize these assets at some future point."). Also, despite expiration of the prior warrants, the government continued to press counsel to turn over retainer funds (even without any valid warrant) and maintained that counsel could not access and use the retainer funds in their trust accounts to compensate for ongoing work and earned fees.

---

[2] Movants' applications for emergency stays were granted by this Court and the Arizona federal court, although some of the orders came too late, because the government had already obtained "in lieu" disbursements under threat of execution of the warrants. *See, e.g.*, Order, No. 2:18-MJ-2880 (Nov. 13, 2018) (stay regarding retainer funds held by Keker Van Nest & Peters for representation of Ms. McDougall); *US v. Lacey*, Dkt. Nos. 361, 369, 384 (stays entered by Arizona federal court).

[3] The firms are Piccarreta Keenan Davis Fidel PC (counsel for Andrew Padilla); Karp & Weiss PC (counsel for Joye Vaught); and Keker, Van Nest & Peters LLP (counsel for Elizabeth McDougall).

During the hearing, the Court expressed concerns about the government's conduct. In particular, the Court noted the "strong language" of DOJ counsel in emails stating that the government would serve its seizure warrants notwithstanding any efforts by Movants to seek judicial relief. *See* Dec. 12 Trans. at 67:21-69:21. The Court also questioned the government's refusal to return the wire transfer to Ms. Chapman's firm when a stay order issued less than an hour after the firm had to wire the funds to meet the government's "in lieu" demand. *See* Dec. 12 Trans. at 96:23-97:5; *see also id.* at 96:7-96:9 (Court's question to government counsel: "[A]re you really going to hang your hat on … this timing of a matter of hours[?]"). More generally, the Court questioned the government's practices of continuing to pressure counsel to turn over retainer funds *after* counsel filed motions to stay the seizure warrants. *Id.* at 91:14-92:20 (Court's question to government counsel: "Well, what do you do then once you know there's a motion to stay? Do you just proceed?"); *id.* at 95:15-95:17 ("Maybe your response is 'tough[?]'").

At the end of the December 12 hearing, the Court directed the government to file a supplemental brief addressing (1) its claims of mootness; (2) the issues regarding the government's refusal to honor the wire recall from Ms. Chapman's firm after the Arizona court's stay order; and (3) as to all of the Movants and cases before the Court, whether the government had similarly refused to stand down and continued to threaten execution of its seizure warrants even after Movants sought stays (which is true for all of the Movants). *Id.* at 111:19-114:4. The Court directed the government to file its brief by December 17, 2018, and allowed Movants until December 21 to reply. *Id.* at 114:8-114:25.

**D. The Parties' Efforts to Agree to a Briefing Schedule and Interim Relief.**

Shortly after the December 12 hearing and the Court's orders for further briefing, the government contacted Movants' counsel, suggesting the parties should agree to a briefing schedule for issues to be addressed by the Court. The government readily agreed to waive all arguments regarding mootness. The government said nothing about

the other issues the Court asked to be addressed, but suggested the parties should brief whether the seizure warrants were "subject to any standard other than probable cause." The government also proposed that all counsel representing Movants and related parties would be entitled to access and use retainer funds for all fees earned through November 30, 2018 – including that the government would return to counsel retainer funds the government previously seized or obtained.

Movants responded that they could not agree to the government's characterization that constitutional and other challenges to the seizure warrants and the government's actions only concerned whether a "probable cause standard" applies. Movants stressed that they would not waive any of their challenges to the seizure warrants and the government's actions on constitutional and other grounds. Movants proposed that the parties stipulate that the Court "should address, initially, Movant's challenges that the Government's seizure warrants and actions are impermissible under the First Amendment and corresponding principles of the Fourth Amendment," with the understanding that Movant's other challenges could be raised later or as the Court allowed (*e.g.*, concerning the government's threats and pressure to cause counsel to turn over retainer funds; its material misstatements and omissions in affidavits for the warrants). The government agreed to this, at least initially. Movants also pointed out that the government's preferred approach of briefing issues in stages risked dragging out resolution, and for this reason proposed that the government's agreement to allow counsel to use retainer funds extend to January 31, 2019. In response to this suggestion, however, the government reneged on its prior offers, refused to return funds to counsel for fees earned (even up to November 30, 2018), and insisted that Movants accept its proposal to ask the Court to take briefing on the "limited issue" of whether a probable cause standard applied to the seizure warrants. In other words, the government's view of the status quo is that all of its seizures and other grabs of retainer funds should stand, while the parties brief and argue issues as framed by the government, and Movants'

1  counsel are denied use of retainer funds to pay for this work (or any other defense of the
2  criminal prosecution and other cases).
3      Movants declined the government's backtracking offer. As the parties were
4  unable to agree on an alternate approach, Movants assumed the government would
5  therefore respond to the Court's December 12 orders. Instead, the government ignored
6  the orders and filed its *Ex Parte* Application.

### III. ARGUMENT

Movants' original Motion challenging the retainer seizure warrants and the government's actions sought immediate relief in the form of a temporary restraining order under Fed. R. Civ. P. 65(b). *See* App. to Stay Execution of Seizure Warrants, at 2, No. 18-MJ-02876. The purpose of the Motion was to preserve the availability of retainer funds because of the government's violation of established First and Fourth Amendment principles by seizing proceeds from publishing activities without proving that all published speech was illegal and unprotected. *See Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 65-66 (1989); *Adult Video Ass'n v. Barr*, 960 F.2d 781, 788 (9th Cir. 1992), *readopted after rehearing, Adult Video Ass'n v. Reno*, 41 F.3d 503, 505 (9th Cir. 1994); *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Bd.*, 502 U.S. 105, 115 (1991); *see generally* Motion at 9-11 & Attachments A, B.

TROs are governed by the same standards as preliminary injunctions, *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), meaning a TRO should issue when Movants show (1) a likelihood of success on the merits; (2) that they will suffer irreparable harm if the preliminary relief is not granted; (3) the balance of equities favors granting the relief; and (4) the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the Ninth Circuit, courts may evaluate the *Winter* factors on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction [or TRO], so long as the [movant] also shows that there is a likelihood of irreparable injury and that the

injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

In this case, there are ample grounds to order preliminary relief while the Court proceeds to take further briefing to decide the constitutional issues and *Franks* issues (if necessary). In the nearly two months the stay motions have been pending before this Court, the government has offered no opposition to Movants' arguments that the seizure warrants violate the First and Fourth Amendments. The only argument the government raised in response to the Motion was to assert that seizure warrants had expired and so all challenges were moot. Yet, the veracity of that argument is subject to question given that the government immediately dropped it after the December 12 hearing (thus conceding the argument lacked merit). Regarding its coercive pressuring of Movants' counsel to turn over retainer funds notwithstanding stay motions and orders, the government has chosen to ignore the Court's order calling for further explanation. Likewise, the government offers no response concerning its refusal to return wired funds to Ms. Chapman's firm when the wire transfer was recalled less than an hour after a stay order was issued. In all of these respects, Movants have shown grounds for likely success on their challenges, especially given the government's lack of opposition and blanket refusals to respond on the merits.[4]

At the same time, the government has not plausibly contested that Movants are suffering irreparable harm by the day because the government has seized, obtained, and/or effectively frozen retainer funds. The government has argued that Movants could seek return of funds after conclusion of the criminal case (and related forfeiture proceedings if they should occur) in 2020, but that is no answer, as it simply guarantees success of the government's maneuver to deprive defendants of the moneys needed to

---

[4] Insofar as the government has claimed that it is merely seeking to prevent parties from using criminal proceeds supposedly subject to forfeiture, its supposedly altruistic position is belied by the fact that government has freely allowed Ferrer and Backpage.com to have and use retainer funds, while offering use of such funds to other counsel, then reneging on the offers, apparently based on the government's strategic maneuvers to limit or eliminate some defendants' ability to defend.

defend the charges against them. The government has suggested that defendants' only other recourse should be to seek a hearing under *United States v. Monsanto*, 491 U.S. 600 (1989), but that presumes the government's seizures were proper in the first place, and would deprive defendants of their ability to enforce constitutional rights.

It is well established that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976); *accord Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Washington v. Trump*, 847 F.3d 1169 (9th Cir.), *cert. denied sub nom.*, *Golden v. Washington*, 138 S. Ct. 448 (2017). In a similar vein, the Ninth Circuit has "consistently recognized the significant public interest in upholding First Amendment principles," holding in the context of requested injunctive relief that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Sammartano v. First Judicial Dist. Court, in & for Cty. of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002); *accord Melendres v. Arpaio*, 695 F.3d at 1002.

At the very least, Movants have demonstrated serious questions on the merits and a balance of hardships and likelihood of irreparable injury that tips sharply in their favor. *See Cottrell*, 632 F.3d at 1134–35. The government's lack of any opposition up to this point all but concedes that preliminary relief is warranted.

By filing its *Ex Parte* Application, the government suggests the only issue is a schedule for briefing, while all of the retainer funds remain in the government's hands or are otherwise effectively frozen and cannot be used. In effect, the government is imposing an unconstitutional restraint, then, without offering any defense of its actions, urging the Court to allow and endorse the restraint pending further briefing, argument, and resolution of the challenges to the government's unconstitutional actions. To accept the government's approach would be to turn principles of preserving status quo on their head.

Given the record here and the significant infringement of constitutional rights at stake, Movants urge that the Court should enter a preliminary order to restore and

preserve the status quo as it stood before the government requested the challenged seizure warrants. Specifically, the Court should order that:

- All retainer funds held by Movants' counsel (such as Piccarreta Davis Keenan Fidel PC; Karp & Weiss PC; and Keker, Van Nest & Peters LLP) may be used for representation and ongoing work;
- The government must return to counsel all funds obtained by its seizure warrants and "in lieu" demands;
- The government may not restrain or encumber use of any of these retainer funds in any way pending resolution of the constitutional and other issues raised by Movants' motions; and
- The parties will further brief the constitutional and other issues raised by Movants' motions pursuant to a schedule to be set by the Court or by agreement among the parties.[5]

## IV. CONCLUSION

The Court has expressed its concerns about the government's retainer seizure warrants and actions. The Court asked for briefing from the government. The government has chosen not to comply, just as it has refused for many months to respond about its constitutional violations in obtaining and effecting the seizure warrants.

The government has urged that the Court should address the constitutional issues concerning the government's seizure warrants. While Movants do not agree with the government's characterization that the only issue is whether "a probable cause standard applies," we welcome the opportunity to address the First, Fourth, Fifth, and Sixth Amendment issues. However, in the interim, the government should not be allowed to maintain and effectively enforce its challenged warrants and seizures. Movants are

---

[5] Movants are generally amenable to the dates for dates set out in the government's *Ex Parte* Application (briefing dates of or around January 22, February 11 and 24, 2019), but this scheduling is necessarily dependent on (1) what issues the Court will address; and (2) interim relief so that Movants and others are not prejudiced pending briefing and decision.

aware of no authority allowing the government to continue seizures or other restraints the government has not even tried to defend against constitutional challenges.

Dated: December 28, 2018

BIENERT, MILLER & KATZMAN, PLC
*s/ Thomas H. Bienert*
Thomas H. Bienert
Whitney Z. Bernstein
Attorneys for James Larkin

LIPSITZ GREEN SCIME CAMBRIA LLP
*s/ Paul J. Cambria, Jr.*
Paul J. Cambria, Jr.
Attorneys for Michael Lacey

BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG AND RHOW
*s/ Gary S. Lincenberg*
Gary S. Lincenberg
Ariel A. Neuman
Attorneys for John Brunst

DAVIS WRIGHT TREMAINE, LLP

James C. Grant
Attorneys for Michael Lacey and James Larkin

MITCHELL STEIN CAREY CHAPMAN PC

*/s/ Anne M. Chapman*
Anne M. Chapman
Attorneys for certain former Backpage.com employees

FEDER LAW OFFICE, P.A.

_____
Bruce Feder
Attorneys for Scott Spear


PICCARRETA DAVIS KEENAN FIDEL PC

_____
Michael L. Piccarreta
Attorneys for Andrew Padilla


KARP & WEISS PC

_____
Steve Weiss
Attorneys for Joye Vaught

RESPONSE TO GOVERNMENT'S *EX PARTE* APPLICATION TO SET BRIEFING SCHEDULE

# CERTIFICATE OF SERVICE FOR UNDER SEAL FILING

I declare that I am a citizen of the United States and I am a resident and employed in Orange County, California; that my business address is 903 Calle Amanecer, Suite 350, San Clemente, California 92673; that I am over the age of 18 and not a party to the above-entitled action.

I am employed by a member of the United States District Court, and at whose direction I caused service of the following documents on December 28, 2018 on all interested parties in this action as follows: **(1) RESPONSE TO GOVERNMENT'S *EX PARTE* APPLICATION TO SET BRIEFING SCHEDULE**

**[X] BY ELECTRONIC TRANSMISSION:** by electronically transmitting a a PDF Version of all the documents listed above to the following email addresses:

**(1) kevin.rapp@usdoj.gov; (2) margaret.perlmeter@us.doj.gov;**

**(3) peter. kozinets@usdoj.gov; (4) andrew.stone@usdoj.gov;**

**(5) john.kucera@usdoj.gov; (6) reginald.jones4@usdoj.gov**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 28, 2018, at San Clemente, California.

*/s/ Toni Thomas*
Toni Thomas