NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
JOHN J. KUCERA (California Bar No. 274184)
Assistant United States Attorney
Asset Forfeiture Section
     Federal Courthouse, 14th Floor
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3391
     Facsimile: (213) 894-0142
     E-mail: John.Kucera@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEIZURE OF:<br><br>UP TO AND INLCUDING $10,000 IN BANK FUNDS HELD IN JP MORGAN CHASE ACCOUNT #XXXX9285; ET AL. | Case No. 18-MJ-2875-RAO<br><br>**GOVERNMENT'S SUR-REPLY TO EMERGENCY MOTION TO STAY SEIZURE OF ATTORNEYS' FEES** |

Plaintiff United States of America (the "government"), by and through its counsel of record, the United States Attorney's Office for the Central District of California and Assistant United States Attorney John J. Kucera, upon Order of this Court, submits its Sur-Reply to the Emergency Motion to Stay Seizure of Attorneys' Fees and the Application to Stay Execution of Seizure Warrants ("Motions").[1]  In support, the government states as follows:

---

[1] The Motions only seek remedies as it relates to the attorney IOLTA accounts; no other defendant assets are at issue here.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

During the hearing on December 12, 2018 ("Hearing"), the Court requested the government to submit a Sur-Reply to brief the case and controversy issue and address funds that were transferred in lieu of execution of the seizure warrant.

On December 20, 2018, the government filed its *ex parte* application not to proceed with its mootness argument[2] and to seek a briefing schedule on the sole issue of whether the seizure warrants were required to meet any standard other than probable cause before they could be issued.  Oppositions were filed on December 28, 2018.  On December 28, 2018, this Court denied the government's *ex parte* application and ordered the government to file a sur-reply to the Motions by January 7, 2019.

**II.   THERE IS NO CASE AND CONTROVERSY BECAUSE THERE IS NO INJURY AND THE CONDUCT ALLEGED IS NOT CAPABLE OF REPETITION YET EVADING REVIEW**

Pursuant to the injury requirement of Article III, "a litigant must show that the allegedly unlawful conduct caused him to suffer an actual or imminent injury—not a hypothetical, conjectural, or abstract injury—that a favorable decision would likely redress."  *United States v. Lazarenko*, 476 F.3d 642, 649 (9th Cir. 2007) (citing *Elk Grove Unified Sch. Dist. v. Newdow*,

---

[2] Justicability, including issues of standing and mootness, goes to the Court's subject matter jurisdiction—and cannot be determined by stipulation or waiver. *See, e.g., United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 551(1996); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'") (citation omitted).

542 U.S. 1, 12 (1984)).[3]  The issues presented by Movants before this Court fail to demonstrate any case or controversy required to establish ripeness.  Additionally, Movants' argument that the alleged conduct is capable of repetition yet evading review is without merit.  For the reasons demonstrated below, Claimants' Motion should be denied as moot.

### a. No Case And Controversy Exists

Movants first argue that the warrants identified in their Motions are not moot because there is an actual case and controversy giving rise to actual or eminent injury.  In a similar forfeiture case, *United States v. Lazarenko*, 476 F.3d 642 (9th Cir. 2007), the Ninth Circuit found no case and controversy. That finding is applicable here.

Movants here claim injuries substantially similar to the claimants in *Lazarenko*, including: "(1) unlawful restraint on the assets seized from their bank accounts, and (2) denial of an immediate hearing after the government seized their property." *Id.* at 650.  Claimants in *Lazarenko* argued these "injuries" were sufficient to satisfy Article III.  The Ninth Circuit disagreed, holding that neither argument "constitute[ed] a legally cognizable injury in light of the statutory scheme specifying the process accorded to [the claimants] in connection with a criminal forfeiture."  *Id.*

The Ninth Circuit found that "Section 853(n) provide[d] [claimants with] an adequate opportunity to protect their claimed

---

[3] Importantly, "[c]ourts often treat the constitutional component of ripeness under the rubric of standing; indeed, 'in many cases, ripeness coincides squarely with standing's injury in fact prong.'"  *Lazarenko*, 476 F.3d at 649 (citing *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (*en banc*)).

- 3 -

interest in the [defendant assets] in an ancillary proceeding where they may present evidence, offer witnesses, and cross-examine witnesses who appear at the hearing." *Id.;* 21 U.S.C. §853(n)(5). The Ninth Circuit stated that "[a]lthough the government seized [claimants' assets] from accounts [in claimants'] control, whether the seizure[s] actually injure[d] [claimants was] conjectural or hypothetical because it depend[ed] on the district court's findings on who possesse[d] superior title to the res under § 853(n)(6)." *Id.* The Court recognized that during an ancillary proceeding the claimants would have the opportunity to "present all arguments and defenses to defeat the government's forfeiture, including those raised in their seizure motion ...." *Id.*

Here, there are at least two reasons that there is no case or controversy:

First, on November 6, 2018, the seizure warrants at issue each expired, and, as further explained below, the government here again reiterates that if the government elects to seek additional seizure warrants regarding these same assets, the government would submit substantially different affidavits in support of such applications.[4] At this time, there is simply nothing to adjudicate, and any issue regarding these particular seizure warrants are therefore moot.

---

[4] Given this Court's history and familiarity with the procedure and issues, as well as this Court's remarks at the Hearing, the government offers to submit any future seizure warrant applications to this Court. Alternatively, because of the potential for overlapping First Amendment issues that could have a direct impact on the related criminal proceeding in the District of Arizona, the government also proposes, with leave of this Court, to seek seizure warrants in the District of Arizona.

Second, even if these seizure warrants had not expired and been rendered moot, like the claimants in *Lazarenko*, Movants offer no explanation why neither a civil nor ancillary proceeding to the criminal case would not adequately protect their interests in adjudicating their competing claims to the property. *Id.* at 650. Even if the Court does not review Movants' various arguments now, Movants will have the opportunity to make their arguments at the appropriate time. At no point has this Court or the District of Arizona "held that it would not consider the arguments raised in [Movants'] seizure motion[s]." *Id.* at 651.

Also, like *Lazarenko*, at the Hearing and in their motions, Movants' "counsel attributed the inadequacy of the ancillary proceeding to the delay between the government's seizure and the hearing on their claims." *Id.* Here, Movants contend that allowing the government's seizure without holding a prompt hearing violates their First, Fifth and Sixth Amendment rights. Yet, as the Ninth Circuit found in *Lazarenko*, Movants have failed "to demonstrate that the delay actually injured them." *Id.* "In sum, [Movants] fail[ed] to identify a concrete and imminent injury where, as soon as our mandate issues, they may adequately seek to perfect their claimed superior interests in the funds and bonds in the ancillary proceeding." *Id.* As the government pointed out in previous filings, with regard to all seized property—as well as any property seized in the future—Movants have recourse in either or both a civil proceeding and an ancillary hearing in the related criminal matter, where trial is presently set for January 15, 2020.

### b. The Alleged Controversy Is Not Capable of Repetition Yet Evading Review

Alternatively, Movants argue that the Motions are not moot because the government intends to issue new warrants, rendering the controversy capable of repetition yet evading review. Procedurally, in their effort to challenge the validity of the seizure warrants, Movants' motions resulted in multiple stays of the proceedings. Multiple stays do not give rise to a controversy capable of repetition yet evading review.

During the Hearing, Movants cited *In re Solomon*, 465 F.3d 114 (3d Cir. 2006) ("*Solomon*") as controlling authority. In *Solomon*,[5] the Third Circuit included a footnote stating, "Although the search warrant had expired ... the district court properly found that the motion to quash was not moot because the Government stated that it intended to re-issue the search warrant." *Id.* at 117, n.1. The issue before the Third Circuit was whether the district court's order denying the defendant's motion to quash a search warrant (seeking the defendant's blood and saliva) qualified for interlocutory review under the collateral order doctrine, but not whether there was an adequate case and controversy surrounding the search warrant itself or whether the controversy itself was capable of repetition yet evading review.

Here, the government is not moving forward with the existing seizure warrants. Should the government elect to apply for

---

[5] The Third Circuit was summarizing procedural history in footnote 1. In that footnote, the Third Circuit cited to *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572 (1987), for the general premise that a "case is not mooted where the controversy is one capable of repetition yet evading review." That Supreme Court case has nothing to do with (and does not address) the issues presented before this Court.

additional seizure warrants at some future point, this Court could then decide whether to issue warrants, deny the application, or require additional briefing or hearings from the government or any other party. As of now, because no seizure warrants were executed, there is no injury. Should the government ever elect to seek new seizure warrants, at that time there will be an opportunity for review and to seek redress for any injury. *Solomon*'s out-of-Circuit *dicta* is inapplicable.

If the government proceeds to seek new warrants, this situation presents the opposite of one that is capable of repetition yet evading review. Any future applications for seizure warrants will <u>necessarily</u> result in the Court reviewing such applications. Indeed, such warrants would not "evade" review, but would require review to the exact same extent that the government ever applies for new seizure warrants.

**III. FUNDS TRANSFERRED IN LIEU OF EXECUTION OF SEIZURE WARRANTS CONSTITUTED A VOLUNTARY SURRENDER OF DEFENDANT ASSETS**

With respect to funds transferred to the government in lieu of execution of the seizure warrants, those funds were transferred willingly, constituting a voluntarily surrender of those assets. The government made contact with firms that held assets that were the subject of seizure warrants and that could be affected by any possible seizures. The government did this in an effort to negotiate a voluntary transfer of funds that would allow these firms to avoid any collateral consequences related to issuing seizure warrants on attorney trust accounts. The government was not obligated to negotiate, and the government

could have elected to execute the warrants if negotiations failed, but the government was not required to do so.

Movants claim their voluntary transfer of the assets was not "voluntary" because they were under the assumption that the government intended to execute the search warrants, implying that this knowledge constituted "duress." Whether Movants' consent to transfer funds in lieu of execution of the seizure warrant "was in fact voluntary or was the product of duress or coercion is to be determined by the totality of all the circumstances." *United States v. Mendenhall*, 446 U.S. 544, 545 (1980).

Ninth Circuit courts have consistently upheld a defendant's conviction where evidence was voluntarily handed over to law enforcement during traffic stops. *See, e.g., United States v. Nelson*, 443 F.2d 908 (9th Cir. 1971). In *Nelson*, neither the district court nor the Ninth Circuit found that the defendant's voluntary actions resulted from duress or coercion – notwithstanding the intrusive and confrontational circumstances normally incident to traffic stops. Traffic stops resulting in searches and seizures are not comparable to negotiations among experienced attorneys.

Here, the government offered Movants an alternative to the execution of seizure warrants, and Movants were free to disengage negotiations at any time and direct the government to either execute the warrants or not. Given the totality of the circumstances, Movants' claim of duress or has no merit.

Alternatively, Movants argue that they "perceived threats" from the government that "forced their hand" to turn over the funds. Similarly, in *Bowes v. Glick Bros. Lumber Co.*, 146 F.2d

566 (9th Cir. 1945), the defendants argued that the government's demands were conducted in a "high handed manner" and "intimidating" manner. *Id.* at 569-70. The Ninth Circuit found these arguments lacking in credibility, noting that even "[a]ssuming that the threats of dire consequences were made as charged, it is hardly credible that these experienced businessmen, with counsel at their elbow, understood them in any other sense ... ." *Id.* at 570.

It is no different here. The government negotiated with experienced and highly capable attorneys who were free to back out at any time (of which several did so). Mere allegations that the government was "heavy-handed" in its negotiations, even if true, does not justify voiding otherwise valid agreements between capable and sophisticated parties.

Finally, the Fourth Amendment is not implicated. "With respect to the Fourth Amendment, it is established that a search and seizure may be made without a search warrant if the individual freely gives his unequivocal and specific consent to the [seizure], uncontaminated by any duress or coercion, actual or implied." *United States v. Remolif*, 227 F. Supp. 420, 422-23 (D. Nev. 1964).

Here, there was no "lawless police action" instigated by the government. *See United States v. Damitz*, 495 F.2d 50, 55-56 (9th Cir. 1974) (citing *Linkletter v. Walker*, 381 U.S. 618 (1965)). The government simply proposed an alternative solution for the mutual benefit of the parties involved, and certain of Movants freely elected to avail themselves of this negotiated resolution.[6]

---

[6] Notwithstanding that these funds were turned over voluntarily, Movants may still challenge the legitimacy of the government

**IV. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court find this Motion moot and find that all proceeds voluntarily turned over to the government should remain in the government's custody.

It is also government's understanding, from the instructions provided during the Hearing and the Court's Order of December 28, 2018, that any constitutional issues, including any First Amendment issues, are not being addressed at this time.  Pursuant to this understanding, the government does not waive any constitutional arguments, including those involving the First Amendment.  If the government's understanding is incorrect, it respectfully ask this Court for clarification, and that the government be allowed to respond accordingly.

Dated: January 7, 2019   Respectfully submitted,

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

   /s/*John J. Kucera*
JOHN J. KUCERA
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

---

holding these funds.  The government intends to proceed both civilly and criminally to forfeit these funds, and Movants are free to challenge the government's forfeiture actions as they deem appropriate.