Thomas H. Bienert, Jr., CA State Bar No. 135311
Whitney Z. Bernstein, CA State Bar No. 304917
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone:    (949) 369-3700
Facsimile:    (949) 369-3701
Email:        tbienert@bmkattorneys.com
              wbernstein@bmkattorneys.com
*Attorneys for James Larkin*

Gary S. Lincenberg, State Bar No. 123058
Ariel A. Neuman, State Bar No. 241594
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067-2561
Telephone:  (310) 201-2100
Facsimile:   (310) 201-2110
Email:        glincenberg@birdmarella.com
              aneuman@birdmarella.com
*Counsel for John Brunst*

Additional counsel listed on next two pages

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In the Matter of the Seizure of:**<br><br>Up To And Including $10,000 in Bank Funds Held in JP Morgan Chase Account #XXXXX9285; Up To and Including $100,000 in Bank Funds Held in JP Morgan Chase Account #XXXXX4381; Up To and Including $250,000 in Bank Funds Held in JP Morgan Chase Account #XXXXX9698; and Up To And Including $100,000 in Bank Funds Held in JP Morgan Chase Account #XXXXX5397. | Case No. 18-MJ-02875<br><br>Simultaneously Filed In:<br>18-MJ-02872; 18-MJ-02873; 18-MJ-02874; 18-MJ-02876; 18-MJ-02878; 18-MJ-02880; and 18-MJ-02883<br><br>**RESPONSE TO GOVERNMENT'S SURREPLY TO MOTION REGARDING SEIZURE OF ATTORNEY RETAINERS** |

James C. Grant (Wash. Bar No. 14358; admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Ave, Suite 2200
Seattle, Washington 98101
Telephone:   (206) 757-8096
Facsimile:   (206) 757-7096
Email:        jimgrant@dwt.com
*Counsel for Michael Lacey and James Larkin*

Paul J. Cambria, Jr., State Bar No. 177957
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite #120
Buffalo, New York 14202
Telephone:   (716) 849-1333
Facsimile:   (716) 855-1580
Email:        pcambria@lglaw.com
*Counsel for Defendant Michael Lacey*

Michael L. Piccarreta (AZ Bar No. 003962; admitted *pro hac vice*)
PICCARRETA DAVIS KEENAN FIDEL PC
2 E Congress St., Suite 1000
Tucson, Arizona 85701
Telephone:   (520) 622-6900
Facsimile:   (520) 622-0521
Email:        mlp@pd-law.com
*Counsel for Andrew Padilla*

Steve Weiss (AZ Bar No. 002261; admitted *pro hac vice*)
KARP & WEISS PC
3060 N Swan Rd.
Tucson, Arizona 85712
Telephone:   (520) 325-4200
Facsimile:   (520) 325-4224
Email:        sweiss@karpweiss.com
*Counsel for Joye Vaught*

Additional counsel listed on next page

Bruce Feder (AZ Bar No. 004832; admitted *pro hac vice*)
FEDER LAW OFFICE, P.A.
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone:   (602) 257-0135
Email:        bf@federlawpa.com
*Counsel for Defendant Scott Spear*

Anne M. Chapman, CA State Bar 203865
MITCHELL STEIN CAREY CHAPMAN PC
One Renaissance Square
2 North Central Avenue, Suite 1450
Phoenix, Arizona 85004
Telephone:   (602) 388-1232
Facsimile:    (602) 358-0291
Email:        anne@MSCCLaw.com
*Counsel for certain former Backpage.com employees*

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................... 1

II.  BACKGROUND ............................................................................................ 2

III.  ARGUMENT.................................................................................................. 7

    A.  Movants' Challenges to the Government's Seizure Warrants and
    Actions Are Not Moot............................................................................. 7

    B.  The Government's Conduct is Capable of Repetition Yet Likely to
    Evade Review........................................................................................ 10

    C.  The Government Cannot Avoid Review By Claiming That Counsel
    Voluntarily Turned Over Retainer Funds. ................................................ 12

IV.  CONCLUSION............................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

*Adult Video Ass'n v. Barr*,
   960 F.2d 781 (9th Cir. 1992) ............................................................................................9

*Adult Video Ass'n v. Reno*,
   41 F.3d 503 (9th Cir. 1994) ............................................................................................9

Application,
   18-MJ-2875 (Nov. 20, 2018) ........................................................................................4

*Bell v. City of Boise*,
   709 F.3d 890 (9th Cir. 2013) ........................................................................................10

*Bowes v. Glick Bros. Co.*,
   146 F.2d 566 (9th Cir. 1946) ..................................................................................13, 14

*Bumper v. North Carolina*,
   391 U.S. 543 (1968) ................................................................................................12, 13

*Cal. Coastal Comm'n v. Granite Rock Co.*,
   480 U.S. 572 (1987) ......................................................................................................10

*Elrod v. Burns*,
   427 U.S. 347 (1976) ........................................................................................................8

*Fikre v. Federal Bureau of Investigation*,
   904 F.3d 1033 (9th Cir. 2018) ......................................................................................10

*Fort Wayne Books, Inc. v. Indiana*,
   489 U.S. 46 (1989) ..........................................................................................................9

*Franks v. Delaware*,
   438 U.S. 154 (1978) ........................................................................................................3

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ......................................................................................................10

*In re Grand Jury Proceedings*,
   744 F.3d 211 (1st Cir. 2014) ....................................................................................10, 11

*In re Grand Jury Proceedings, Thursday Special Grand Jury*,
   33 F.3d 342 (4th Cir. 1994) ..........................................................................................11

*In re Solomon*,
   465 F.3d 114 (3d Cir. 2006) ............................................................... 10

*Knox v. Serv. Emps. Int'l Union, Local,*
   *1000*, 567 U.S. 298 (2012) ............................................................... 10

*McCormack v. Herzog*,
   788 F.3d 1017 (9th Cir. 2015) ............................................................ 10

*Schneckloth v. Bustamonte*,
   412 U.S. 218 (1973) ........................................................................ 13

*United States v. Lazarenko*,
   476 F.3d 642 (9th Cir. 2007) ............................................................ 7, 8

*United States v. Nelson*,
   443 F.2d 908 (9th Cir. 1971) ............................................................ 13

**Statutes**

21 U.S.C. § 853(n) ............................................................................. 7

# I.   INTRODUCTION

Two months ago, Movants challenged the government's seizure of funds from attorney trust accounts, asking the Court to grant interim relief and proceed to address the government's violations of fundamental constitutional principles.  In response, the government avoided the merits of Movant's challenges and instead contended the motions were moot because the seizure warrants had expired.  Then, after the Court called for further briefing, in an *ex parte* filing the government waived its claims of mootness but still refused to address the merits or the Court's other concerns about the government's tactics of pressing Movants' counsel to turn over retainer funds even after Movants had sought judicial relief.  The Court rejected that tack and reiterated its order that the government explain its actions.  Now, in its Sur-Reply to Emergency Motion to Stay Seizure of Attorneys' Fees (*see, e.g.*, 18-MJ-2875, Doc. No. 29[1]; "Surreply"), the government disregards its prior waiver and attempts to avoid review by again arguing mootness.

Movants' challenges to the government's actions of seizing attorney retainers are decidedly not moot.  The government holds millions of dollars of Movants' funds that were intended for defense of charges in *United States v. Lacey*, No. CR-18-422-PHX-SPL (D. Ariz.) and other matters.  The government's actions of effecting seizures by obtaining *ex parte* warrants with no notice or adversary hearing and with legally and factually flawed affidavits, executing some of those warrants, and threatening to execute others constitute unprecedented violations of First, Fourth, Fifth and Sixth Amendment rights.  The government admits it will continue to pursue seizures by seeking new warrants.  Yet, the fundamental issue raised by Movants' challenges – the issue the government continues to try to avoid – is that First Amendment principles preclude the

---

[1] Identical surreplies were filed in 18-MJ-2782, 18-MJ-2873, 18-MJ-2874, 18-MJ-2876, 18-MJ-2878, 18-MJ-2880 and 18-MJ-2883, but these dockets remain sealed despite Movants' request to unseal.  Accordingly, future citations to docket entries will reference where the pleading appears in docket 18-MJ-2875, the only docket that has been unsealed, though the litigation and pleadings are identical in all dockets.

government from seizing assets derived from publishing by *ex parte* warrants at all. At the same time, as to attorney retainer funds it has not yet been able to seize, the government asserts that if counsel use the funds for ongoing defense costs, they will face potential criminal charges.

The government has thus seized, obtained, or frozen all of the attorney retainer funds it has pursued, while successfully avoiding any judicial review of these and other seizures by procedural machinations – and now offers more of the same by seeking to resurrect its previously waived and groundless claims of mootness. Movants have shown the need to address the constitutional issues concerning the government's seizures and conduct. Movants have demonstrated that they suffer irreparable harm by the day. The government still offers no response on these points or on the merits as a whole. The Court should therefore order preliminary relief as Movants have requested – restoring the prior status quo and allowing use of attorney retainer funds – and proceed to hear and decide as promptly as possible the constitutional issues concerning the government's seizure actions.

## II.   BACKGROUND

The following is a recap of the government's actions and positions to date.

On October 31, 2018, the government filed applications and obtained twelve warrants from this Court, eight of which sought to seize funds held in attorney trust accounts for the defense of Movants[2] and related parties. Another warrant sought to seize funds in accounts at USAA Bank, which were held in trust for the benefit of James Larkin's children.[3] These warrants ("Warrants") are the subject of the instant litigation.

---

[2] Movants are James Larkin, Michael Lacey, John Brunst, Scott Spear, Andrew Padilla, Joye Vaught, Elizabeth McDougall, and five former employees of Backpage.com, LLC. The first six individuals are also defendants in *United States v. Lacey*, 1-CR-00422-PHX-SPL (D. Ariz.).

[3] *See* 18-MJ-2881 (C.D. Cal.).

The government's application for the Warrants included an affidavit from a postal inspector that was largely the same affidavit the government previously submitted to obtain two dozen other warrants in an effort to seize all assets of Movants Larkin, Lacey, Brunst, Spear, Padilla, and Vaught ("Initial Warrants").  On August 1, 2018, defendants moved to vacate those warrants as violating the First, Fourth, and Fifth Amendments and, in the alternative, for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). *See* 18-CV-06742-RGK, Doc. No. 6.  At that time, as now, the government used procedural maneuvers to avoid responding to the merits of Movants' challenges – first contending in this Court that issues concerning the Initial Warrants had to be addressed in the District of Arizona and then arguing in Arizona that any challenges to the Initial Warrants had to be heard in this Court.

Remarkably, months later, on October 31, 2018, when the government submitted its applications for the Warrants to this Court, the government apparently did not tell this Court about the prior challenges or the noted misstatements and omission of the postal inspector's affidavits.

After obtaining the Warrants from this Court, which authorized the seizure of funds from attorney retainers and other accounts, the government contacted contacted counsel holding the retainers to offer the "option" of turning over funds "in lieu" of execution of the warrants.  The government emphasized the "adverse effects" that might occur if seizure warrants were executed on the law firm's banks, including that the banks might freeze all of the firms' accounts and thereby disrupt other client relationships.[4]

---

[4] As Amanda Wick of DOJ's Money Laundering and Asset Recovery Section stated: "[O]ften when we serve a seizure warrant on a bank to seize funds from an IOLTA account, the bank freezes the accounts entirely and sometimes more accounts," which "can cause" "adverse effects" on law firms and their relationships with other clients. Exhibit A at 2, Email from A. Wick to M. Piccarreta (Nov. 7, 2018).

Indeed, when the government previously executed a warrant on the bank of one of Movants' counsel, this is exactly what happened, *i.e.*, all of the firm's trust funds were frozen, causing substantial problems for the firm.  *See* Exhibit B, Dec. 12, 2018 Hearing Trans. at 107:22-108:14 (submitted under seal as transcript remains under seal).

All of the Movants moved to stay the seizure warrants in the District of Arizona to obtain judicial review, but the government refused to stand down to allow review. Instead, the government continued to demand that that the law firms remit funds by November 13, 2018 (a Tuesday following Veteran's Day, a day on which both banks and courts were closed), or, the government threatened, it would proceed to execute the warrants. *See, e.g.*, Mot. to Stay, 18-MJ-2880 (C.D. Cal.), Ex. C (concerning retainer funds held by Keker Van Nest & Peters, LLP). Movants' stay motions ultimately were granted,[5] but some orders came too late, as counsel had to remit funds by the government's November 13 deadline. For example, one of the Movants obtained a stay order minutes after having authorized the bank to wire the funds to the government to comply with the government's deadline, and then immediately recalled the wire in light of the order, but the government refused to return the funds. *See* 187-MJ-28775, Dec. 12, 2018 Trans. at 90:10-91:2 (regarding retainer funds held by Mitchell Stein Carey Chapman, PC).

Movants filed their applications challenging the Warrants and seeking interim relief in this Court on November 20 & 21, 2018. *See, e.g.*, Application, 18-MJ-2875 (Nov. 20, 2018), at Doc. No. 4. The government did not respond on the merits but argued only that the motions were moot because the Warrants had expired. *See, e.g.*, Gov't Resp., 18-MJ-28775 (Nov. 27, 2018), at Doc. No. 5. On November 29, 2018, this Court ordered a temporary stay of the government's seizures. *See, e.g.*, Order, 18-MJ-2875, at Doc. No. 6.

On December 12, 2018, this Court held a hearing on the Movants' applications. *See, e.g.*, Minutes of Hearing, 18-MJ-2785, at Doc. No. 23. Upon questioning from this Court, the government represented that all of the Warrants had expired and none had

---

[5] *See, e.g.*, Order, 18-MJ-2880 (Nov. 13, 2018) (stay regarding retainer funds held by Keker Van Nest & Peters for representation of Ms. McDougall); *United States v. Lacey*, Doc. Nos. 361, 369, 384 (stays entered by Arizona federal court).

been executed.[6]  In fact, the government executed at least two Warrants, one to seizue retainer funds held by counsel in Chicago (Poltrock & Giampetro) and the warrant directed to USAA to seize the trust funds of Mr. Larkin's children (*see* 18-MJ-2881 at Doc. 5) (agent certifying that the warrant was executed on November 8, 2018).  All but three of the other law firms remitted funds in the face of the government's threats to execute the Warrants.[7]

Although the Warrants had expired, the government asserted that the three firms that continued to hold retainers could not access the funds because the government alleges they are criminal proceeds.  The government stated that any counsel using these retainer funds would face the prospect of criminal indictment.[8]  The government has thus seized, coerced remittance, or otherwise blocked use of all of the retainer funds that were the subject of the October 31 warrants.  Further, the government indicated it would continue to seek to seize the attorney retainer funds.[9]

This Court expressed concerns about the government's actions, and, in the end, directed the government to file a supplemental brief addressing (1) its claims of mootness; (2) the issues regarding the government's refusal to honor the wire recall from

---

[6] *See* Dec. 12, 2018 Trans. at 9:17-9:23 ("THE COURT: … I want to confirm that there are no active warrants.  In fact, each of the seizure warrants that I issued have now expired.  And none have been executed.  MR. KUCERA:  That is correct. …").

[7] Three firms were able to obtain timely stay orders and a fourth made an agreement with the government to segregate retainer funds in a separate trust account.

[8] *See* Dec. 12, 2018 Trans. at 12:10-12:20 (in response to the Court's question about whether the government had effected "de facto" seizures by its actions, Mr. Kucera stated:  "The concern is that – that the government might view this [accessing and using the retainer funds] as being criminal activity prospectively.  We haven't said that it would be criminal activity and that we would seek to indict.  We have said that it's something that we – we would definitely look at, which is the case in any activity.  We cannot give them the comfort that they seek of saying that we will not view this as criminal activity if you were to do something. …").

[9] *See* Dec. 12, 2018 Trans. at 107:4-107:10 (Mr. Kucera:  "The government in all likelihood will again seek to seize these assets at some future point.").

RESPONSE TO GOVERNMENT'S SURREPLY TO MOTION RE SEIZURE OF ATTORNEY RETAINERS

Ms. Chapman's firm after the Arizona court's stay order; and (3) as to all of the Movants and cases before the Court, whether the government had similarly refused to stand down and continued to threaten execution of its seizure warrants even after Movants sought stays.  Dec. 12, 2018 Trans. at 111:19-114:4.

After unsuccessful efforts by the parties to agree to a joint proposal of how the Court might proceed, on December 20, 2018, the government filed its *Ex Parte* Application to Set Briefing Schedule.  *See, e.g.*, Gov't *Ex Parte* Application, 18-MJ-2875 (Dec. 20, 2018), at Doc. No. 25.  The government expressly "with[drew] its arguments that the issues presented by the stay motions are moot." *Id.* at 4.  Movants accordingly did not respond on the issue of mootness, but noted that the government had failed to comply with the Court's December 12, 2018 orders and had offered no opposition on the merits or to Movants' request that the Court enter interim relief to restore the parties to the status quo before the government obtained, executed and pursued the seizure warrants.  *See, e.g.*, Response to *Ex Parte* Application, 18-MJ-2875 (Dec. 28, 2018), at Doc. No. 27.  The Court immediately entered an order denying the government's *ex parte* application and directing that it file a surreply by January 7, 2019. *See, e.g.*, Minute Order, 18-MJ-2875, at Doc. 28.

In its Surreply, the government attempted to resurrect its waived claim of mootness.  The government does not now mention its prior admission that the issues concerning the seizure warrants and its actions are not moot, except cryptically by dropping a footnote asserting that issues of justiciability "cannot be determined by stipulation or waiver."  Surreply at 2, n.2.  The government also does not address the merits of Movants' challenges or requests for interim relief pending hearing and decision on the constitutional challenges.  The government, once again, avoids addressing the issues called for by the Court's December 12 orders (concerning the government's conduct to pressure counsel to turn over retainer funds notwithstanding pending motions for stays).

## III.   ARGUMENT

### A.   Movants' Challenges to the Government's Seizure Warrants and Actions Are Not Moot.

Relying on one case, the government contends there is no case or controversy here. *See* Surreply at 3-5. But the one case the government cites, *United States v. Lazarenko*, 476 F.3d 642 (9th Cir. 2007), is inapposite for many reasons.

In *Lazarenko*, the government obtained a conviction of Lazarenko after a jury trial on charges of money laundering, fraud and transportation of stolen property. *Id.* at 646. Shortly thereafter, the government initiated forfeiture proceedings, including as to $2.5 million in funds and bonds held in an Antiqua bank (Eurofed) that was in liquidation. The government obtained a criminal seizure warrant for the funds.[10] The bank's liquidators challenged the seizure and sought a hearing to assert objections to the forfeiture and claims that they held superior rights in the funds. *Id.* The district court denied the liquidators' *ex parte* application, because ancillary proceedings under 21 U.S.C. § 853(n) were imminent and afforded opportunity for the liquidators to assert their objections and claims. *Id.* at 647.

The liquidators filed an interlocutory appeal and sought mandamus relief, but the Ninth Circuit found that it lacked jurisdiction. *Id.* at 649-53. The Ninth Circuit held that the liquidators failed to show a justiciable case or controversy, as the district court was ready and able to address the claims in ancillary proceedings, which had been held up only by the liquidators' appeal. *Id.* at 651, 653. The court also noted that if the liquidators prevailed on their claims of superior rights in the disputed funds, the district court could award pre-judgment interest. *Id.* at 650, 653. Thus, the court held that the liquidators failed to show injury as to the timing of proceedings to address their claims.[11]

---

[10] The government initially seized the funds by way of a civil seizure warrant, but the court granted summary judgment dismissing the civil action as barred by the statute of limitations, and the government obtained a criminal seizure warrant from the same court. 476 F.3d at 646.

[11] The Ninth Circuit concluded:

RESPONSE TO GOVERNMENT'S SURREPLY TO MOTION RE SEIZURE OF ATTORNEY RETAINERS

The government's out-of-context quotations from *Lazarenko* do not make the case relevant here.  *See* Surreply at 3-5.  *Lazarenko* involved a *post-conviction criminal forfeiture*.  This case involves pretrial civil seizures of individuals' funds held by counsel for defense of criminal charges and other claims.  The issue here is not merely who may have superior ownership interests in the funds at issue, as in *Lazarenko*.  Movants' challenges are that the government's seizures violate fundamental principles under the First Amendment (*i.e.*, the government may not seize assets from publishing based on an *ex parte* finding of probable cause), the Fourth Amendment (*e.g.*, the government's supporting affidavits were strewn with material misstatements and omissions), and the Fifth and Sixth Amendments (*i.e.*, the government's seizure of funds cut off defendants' ability to defend pending criminal charges).  While the liquidators in *Lazarenko* asserted a due process claim about delay of proceedings in which their claims could be addressed, the Ninth Circuit found there was essentially no delay and therefore no injury.  Here, in contrast, precluding consideration of Movants' constitutional challenges until after a criminal trial in 2020 – while allowing the government to block the use of retainer funds necessary to defend the criminal charges – causes immediate, ongoing and potentially crippling injury to defendants.  *See, e.g.*, Response to *Ex Parte* Application, 18-MJ-2875, Doc. No. 27 at 8-9 ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976)).

---

> In sum, Liquidators fail to identity a concrete and imminent injury where, as soon as our mandate issues, they may adequately seek to perfect their claimed superior interests in the funds and bonds in the ancillary proceeding.

476 F.3d at 651.  And,

> Resolving this appeal and issuing our mandate returning jurisdiction to the district court to commence ancillary proceedings constitutes the only impediment to promptly adjudicating unresolved legal and factual issues surrounding Liquidators' entitlement to the res.

*Id.* at 653.

The government otherwise maintains that "the seizure warrants at issue each expired," and therefore, "[a]t this time, there is simply nothing to adjudicate." Surreply at 4. But the government fails to mention that it previously said that it would continue to pursue seizure of attorney retainer funds. *See* Dec. 12, 2018 Trans. at 107:4-107:10. The government also disregards that it holds and refuses to return retainer funds seized through the challenged warrants, while it insists that counsel who still have such funds cannot use them and face possible criminal charges if they do. *See* Dec. 12, 2018 Trans. at 12:10-12:20. The effects of the government's improper seizures and its restraint of funds held for Movants' legal representation continue to this day. The government cannot plausibly claim "there is simply nothing to adjudicate" because it has succeeded in infringing constitutional rights and avoiding judicial review up to this point. The issues here are not moot because the effects of the governments' seizure warrants and coercive conduct are ongoing and continuing.

The government misunderstands First Amendment law when it suggests there can be no claim now because it could submit different affidavits for future seizure warrant applications. *See* Surreply at 4. The point of *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 65-66 (1989), is that First Amendment-protected assets cannot be seized by an *ex parte* warrant founded merely on probable cause. *See* 489 U.S. at 63 ("while the general rule under the Fourth Amendment is that any and all contraband, instrumentalities, and evidence of crimes may be seized on probable cause …, it is otherwise when materials presumptively protected by the First Amendment are involved"), *accord Adult Video Ass'n v. Barr*, 960 F.2d 781, 788 (9th Cir. 1992), *readopted after rehearing*, *Adult Video Ass'n v. Reno*, 41 F.3d 503, 505 (9th Cir. 1994). The government already has improperly seized publishing assets by way of warrants (without satisfying its burden to prove in an adversary hearing that specific speech was illegal and unprotected). It cannot remedy its constitutional violations by insisting that Movants' only recourse is to wait until the government does it again.

The government's argument that the Court should not address Movants' challenges

contradicts established precedent that government authorities cannot moot claims by asserting that they will act differently in future.  A government's claim of voluntary cessation of challenged conduct "does not ordinarily render a case moot" because the government could simply "resum[e] the challenged conduct as soon as the case is dismissed."  *Bell v. City of Boise*, 709 F.3d 890, 898 (9th Cir. 2013) (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012).  Rather, the government bears a "formidable burden" to demonstrate that its "challenged conduct cannot reasonably be expected to start up again."  *Bell*, 709 F.3d at 898 ((quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).  And this means the government must show it is "absolutely clear" that it will not repeat challenged practices.  *See Fikre v. Federal Bureau of Investigation*, 904 F.3d 1033, 1039 (9th Cir. 2018); *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015).  Here, the government has made clear it will *not* cease its challenged conduct, but will continue to try to seize attorney retainers and other assets through *ex parte* warrants, despite that doing so violates the constitution.

## B.    The Government's Conduct is Capable of Repetition Yet Likely to Evade Review.

While the government acknowledges, even now, that it "intends to issue new warrants," it contends the controversy here does not fall within the category of claims capable of repetition yet evading review.  *See* Surreply at 6.  In this regard, the government attempts to write off the Third Circuit's decision in *In re Solomon*, 465 F.3d 114 (3d Cir. 2006), in which the court held that, "[a]lthough the search warrant [at issue] had expired …, the district court properly found that the motion to quash was not moot because the Government stated that it intended to re-issue the search warrant."  *Id.* at 117, n.1 (citing *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 578 (1987), for the principle that a "case [is] not mooted where the controversy is one capable of repetition yet evading review").

Yet, decisions of the First and Fourth Circuits are to the same effect.  In *In re*

*Grand Jury Proceedings*, 744 F.3d 211 (1st Cir. 2014), the First Circuit held that a subpoena issued by an expired grand jury was no longer enforceable, but went on to address the subpoenaed party's challenges, finding that the "case [fell] within the 'capable of repetition yet evading review' exception to the mootness doctrine." *Id.* at 218. The court found the exception applied because the government was continuing its investigation through a successor grand jury, which could "reasonably be expected to issue a new subpoena" to the same party, and the term of the grand jury would "leav[e] too short a period to fully litigate a new subpoena's validity." *Id.* at 219. The Fourth Circuit reached the same result in *In re Grand Jury Proceedings, Thursday Special Grand Jury*, 33 F.3d 342, 347 (4th Cir. 1994) (where government's investigation continued with a second grand jury, court held the controversy was capable of repetition yet evading review, as "[t]here is a reasonable expectation that the complaining party … will be subjected to the same action again").

Here, it is obvious that the government's conduct which Movants' challenge is capable of repetition. The government has now issued more than three dozen warrants to seize assets of Movants, defendants and related parties on the same theory, using near identical declarations from the same postal inspector, all containing the same misstatements and deficiencies. Further, the government's assertion that "no seizure warrants were executed" (Surreply at 7, *see also* Dec. 12, 2018 Trans. at 9:17-9:23), is simply not true – in fact, the government executed several of the October 31 Warrants. And now the government concedes that it plans to continue its course of pursuing and using seizure warrants to obtain or tie up Movants' attorney retainers and, apparently, any and all other assets of Movants Larkin, Lacey, Brunst, Spear, Padilla, and Vaught or related parties that the government may find.

At the same time, the government to date has managed to evade review of its unconstitutional conduct. It did so regarding the Initial Warrants by its shell-game arguments that challenges variously had to be heard in the Arizona District Court, then in this Court. The government continues its procedural machinations now by way of its

mootness arguments, which it first waived and now tries to resurrect.  Regardless, if (or when) the government again seeks *ex parte* seizure warrants, Movants will not have a fair opportunity to obtain review and the constitutionally mandated notice and opportunity to participate in an adversary hearing because the government has stated its intent to pursue *ex parte* warrant applications and indicated that it is unlikely to give counsel the opportunity to send a wire in lieu of execution of the warrant.  Alternatively, if the government chooses to give counsel notice and a similar "in lieu" offer to remit funds, there would still be inadequate time to fully litigate the constitutional flaws of the warrants and the government's conduct, as the recent proceedings in this Court demonstrate.[12]

As reflected by the decisions discussed above, this case is a quintessential example of a controversy that is capable of repetition but would evade review if the Court were to accept the government's strained mootness arguments.

## C.   The Government Cannot Avoid Review By Claiming That Counsel Voluntarily Turned Over Retainer Funds.

Finally, the government asserts that, as to counsel who transferred funds pursuant to the government's "in lieu" offer, "those funds were transferred willingly, constituting a voluntary surrender of those assets."  Surreply at 7.  Using this excuse, the government claims that any flaws of its warrants or challenges to its conduct are irrelevant.  Here again, the government misunderstands fundamental tenets of Fourth Amendment law.

Fifty years ago, in *Bumper v. North Carolina*, 391 U.S. 543 (1968), the Supreme Court established that prosecutors cannot justify a search or seizure as supposedly consensual when a party permits the search in response to authorities' assertion that they have a warrant.  In that case, police appeared at the defendant's house and represented to

---

[12] Additionally, the government's gamesmanship would effectively make it the one that determines when claims are moot.  If the government obtains warrants and executes them quickly enough, it contends that any challenges to the warrants are moot.  If a warrant engenders objections before it is executed, the government avoids review by letting the warrant expire and claiming that any challenges are moot.

his grandmother (who owned the house) that they had a warrant to conduct a search.  *Id.* at 546.  When the grandmother responded, "Go ahead," the officers searched and found a rifle that was later offered into evidence to convict the defendant.  *Id.*  In response to the defendant's motion to suppress, the state asserted that it was not relying on a warrant to justify the search but rather on the grandmother's putative consent.  The Supreme Court rejected this argument.  It first held that, "[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given."  *Id.* at 548.  The Court went on to hold that, when the government purports to be acting pursuant to a warrant, an individual's acquiescence to allow a search or seizure is not consent but is merely submission to claimed lawful authority.

> The issue thus presented is whether a search can be justified as lawful on the basis of consent when that "consent" has been given only after the official conducting the search has asserted that he possesses a warrant.  We hold that there can be no consent under such circumstances. …

> When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search.  The situation is instinct with coercion—albeit colorfully lawful coercion.  Where there is coercion, there cannot be consent.

*Id.* at 548, 550 (footnotes omitted).  Thus, "[a] search conducted in reliance upon a warrant cannot later be justified on the basis of consent, if it turns out that the warrant was invalid."  *Id.* at 549.  These principles have become ensconced in the law.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 233 (1973) ("[I]f under all the circumstances it has appeared that the consent was not given voluntarily—that it was coerced by threats or force, or granted only in submission to a claim of lawful authority—then we have found the consent invalid and the search unreasonable.").[13]

---

[13] The cases cited by the government are irrelevant to the circumstances here.  *See* Surreply at 8-9.  In *United States v. Nelson*, 443 F.2d 908 (9th Cir. 1971) (per curiam), for example, the defendant voluntarily gave a police officer a copy of the title to the car he was driving; the officer did not state or suggest that he had a warrant.  *Bowes v. Glick*

The government's assertion that counsel "willingly" and "voluntarily" turned over their clients' funds held in trust and that this had nothing to do with the government's seizure warrants is, frankly, absurd.  The counsel who remitted funds did so in response to the seizure warrants and the government's claim of lawful authority.  This does not constitute consent under the law so as to vitiate any flaws or review of the warrants. Counsel did not voluntarily turn over funds, but did so only *because of* the seizure warrants the government had obtained and said it would execute if funds were not remitted by November 13 (thereby harming the law firms' banking and client relationships).[14]

Thus, the government cannot evade review of its unconstitutional seizure warrants and conduct by claiming that counsel voluntarily sent client funds to the government, as that would require the government to prove that counsel sent the funds for reasons unrelated to the seizure warrants – something the government plainly cannot do.

## IV.   CONCLUSION

It is time to bring an end to the government's procedural maneuvering and arguments used to avoid addressing the merits of Movants' challenges concerning the seizure warrants and the government's conduct.  Disregarding the Court's two orders, the government still has not explained its actions of pressuring counsel to turn over retainer funds even when they sought judicial relief.  The government has refused again to address Movants' constitutional challenges.  *See* Surreply at 10.

As discussed previously, all of the conditions for preliminary relief are satisfied here.  *See* Response to Government's *Ex Parte* Application at 7-10.  The government has provided no response on this score either.  Accordingly, given the government's conduct

---

*Bros. Co.*, 146 F.2d 566 (9th Cir. 1946), also had nothing to do with a search or seizure warrant; there the court found the defendant voluntarily provided invoices to investigators of the Office of Price Administration several times over a two and one-half month period. *See id.* at 569.

[14] Indeed, given ethical rules, counsel could not turn over client funds without at least ostensibly lawful process requiring them to do so.

as well as the significant infringement of constitutional rights at stake, the Court should

enter a preliminary order to restore and preserve the status quo as it stood before the

government requested the challenged seizure warrants – specifically directing the

government to return all funds seized pursuant to the Warrants and allowing use of

retainer funds for counsel fees and costs, while setting a prompt schedule to hear and

decide the constitutional issues and Movants' challenges on the merits.

Dated:  January 14, 2019

BIENERT, MILLER & KATZMAN, PLC
*s/ Thomas H. Bienert*
Thomas H. Bienert
Whitney Z. Bernstein
Attorneys for James Larkin

LIPSITZ GREEN SCIME CAMBRIA LLP
*s/ Paul J. Cambria, Jr.*
Paul J. Cambria, Jr.
Attorneys for Michael Lacey

BIRD MARELLA BOXER WOLPERT NESSIM
DROOKS LINCENBERG AND RHOW
*s/ Gary S. Lincenberg*
Gary S. Lincenberg
Ariel A. Neuman
Attorneys for John Brunst

DAVIS WRIGHT TREMAINE, LLP

James C. Grant
Attorneys for Michael Lacey and James Larkin

MITCHELL STEIN CAREY CHAPMAN PC

*s/ Anne M. Chapman*
Anne M. Chapman
Attorneys for certain former Backpage.com
employees

1                FEDER LAW OFFICE, P.A.

2

3                *s/ Bruce Feder*

4                Bruce Feder
                  Attorneys for Scott Spear

5

6                PICCARRETA DAVIS KEENAN FIDEL PC

7

8                *s/ Michael L. Piccarreta*

9                Michael L. Piccarreta
                  Attorneys for Andrew Padilla

10               KARP & WEISS PC

11

12               *s/ Steve Weiss*

13               Steve Weiss
                 Attorneys for Joye Vaught

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RESPONSE TO GOVERNMENT'S SURREPLY TO MOTION RE SEIZURE OF ATTORNEY RETAINERS

## CERTIFICATE OF SERVICE FOR UNDER SEAL FILING

I declare that I am a citizen of the United States and I am a resident and employed in Orange County, California; that my business address is 903 Calle Amanecer, Suite 350, San Clemente, California 92673; that I am over the age of 18 and not a party to the above-entitled action.

I am employed by a member of the United States District Court, and at whose direction I caused service of the following documents on January 14, 2019 on all interested parties in this action as follows: **(1) RESPONSE TO GOVERNMENT'S SURREPLY TO MOTION RE SEIZURE OF ATTORNEY RETAINERS**

**[X] BY ELECTRONIC TRANSMISSION:** by electronically transmitting a a PDF Version of all the documents listed above to the following email addresses:

**(1) john.kucera@usdoj.gov;  and (2) USACAC-ChfCriminal@usa.doj.gov**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 14, 2019, at San Clemente, California.

*/s/ Toni Thomas*
Toni Thomas